523 So.2d 291 (1988)
Pamela MEZZACAPPO, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 87-241.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Rehearing Denied May 5, 1988.
*292 Darrell D. Ryland, Marksville, for plaintiff-appellee.
Gold, Little, Simon, Weems & Bruser, William J. Sharp, Alexandria, for defendant-appellant.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
Plaintiff, Pamela Mezzacappo, filed suit against The Travelers Insurance Company (hereafter Travelers) seeking payment of past medical expenses and any future medical expenses incurred in connection with injuries sustained in an accident which occurred on April 16, 1983. At the time of the accident, plaintiff was an employee of KAPB, a radio station owned by Avoyelles Broadcasting Company (ABC), which had in effect for its employees a group hospitalization plan insured by Travelers. Travelers answered denying that any payments remained due plaintiff under the group policy urging that: (1) all covered expenses had been paid; and, (2) plaintiff's coverage terminated by terms of the contract on December 31, 1984 and the policy provided no coverage for medical expenses incurred subsequent to that date. The trial court, relying chiefly on Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La.1984), and Cabibi v. Louisiana Health Service and Indemnity Company, 465 So.2d 56 (La.App. 4th Cir. 1985), rendered judgment in favor of Ms. Mezzacappo for the expenses incurred but not previously paid. Travelers appealed. Plaintiff answered the appeal seeking an amendment of the trial court's judgment decreeing Travelers to be responsible for all future medical expenses arising as a result of the injuries sustained by plaintiff on April 16, 1983.

FACTS
The facts are not in dispute. Plaintiff was severely injured in an automobile accident on April 16, 1983. Since that time she has been disabled. She incurred numerous past medical expenses and will incur more medical expenses in the future.
On the date of the accident, Ms. Mezzacappo was covered by a group insurance policy issued to her employer and administered by Hammond Administrative Services, Inc. (hereafter Hammond). Following the accident, ABC paid Ms. Mezzacappo six weeks of disability pay. ABC continued to pay the premiums on plaintiff's health insurance until KAPB was sold in the fall of 1983. The last premium payment to Travelers on behalf of plaintiff was made in October 1983. According to the testimony of Ronnie Morales, office manager of Hammond, which provided all administrative services for ABC, upon the sale of KAPB, all employees of ABC were terminated except Guy C. Billups, C.J. Coco and Martha Tison. Memos from Hammond to ABC introduced at trial show that insurance premiums were paid for nine employees, including Ms. Mezzacappo, in October 1983, but only for the three heretofore mentioned employees in November 1983 and thereafter.
Testimony and evidence introduced at trial established that Travelers paid all of Ms. Mezzacappo's medical bills through December 31, 1984, excepting a charge of $200.00 which Travelers unilaterally determined to be excessive. Travelers refused to pay and denied any responsibility for medical expenses *293 incurred by Ms. Mezzacappo after December 31, 1984.

THE COVERAGE ISSUE
The Travelers group policy, G.P.369455, which provided coverage to plaintiff, contains the following pertinent provisions:
"COVERED MEDICAL EXPENSES
Covered medical expenses are reasonable charges (see Definitions) actually incurred for the services and supplies listed below upon the recommendation and approval of the attending physician and required for treatment of you or your Dependent, provided such services and supplies are medically necessary.
1. Hospital Services for
a. Room and Board, but as to private room accommodations, not more than the hospital's regular daily semi-private rate.
b. Other Hospital Services and Supplies.
2. Physician's or Surgeon's Services for a surgical procedure and other medical care and treatment.
....
REASONABLE CHARGE
An amount measured and determined by comparing the actual charge with the charges customarily made for similar services and supplies to individuals of similar medical condition in the locality concerned.
....
When Your Insurance Terminates
Your insurance under this Plan will terminate at the earliest time stated below:
1. When your employment terminates. For insurance purposes, your employment is deemed terminated when you cease active work, but the Policyholder may continue your insurance
(a) if you are absent from work because of injury, sickness or pregnancy, except that your Life Insurance may not be continued for more than 12 months if you cease active work before age 60, or
(b) if you are absent from work because of leave of absence or temporary layoff, but only for a limited period as stated in the group policy.
2. When you cease your contributions toward the Plan.
3. When this Plan is discontinued.
....
Health Conversion Privilege
Upon Termination of Insurance
An individual policy providing hospital and surgical benefits may be obtained, without medical examination or other evidence of insurability,
a. By you, when your insurance is terminated due to termination of your employment in the eligible classes; ...
provided such applicant qualifies, makes application for and pays the premium for such individual policy within 31 days after such termination of Insurance.
The rules of The Travelers and the laws of the jurisdiction in which the applicant resides at the time application for the policy is made govern the form of the policy obtained under this provision and the benefit amounts under such policy, which will not necessarily be identical to those of the group policy. Information as to the coverage available and premium rates can be obtained from the Policyholder when insurance under the group policy terminates.
....
Extended Benefits
After Termination of Insurance
. . . . .
COMPREHENSIVE MEDICAL EXPENSE BENEFITS
If the Comprehensive Medical Expense Benefits terminate as to you or your Dependent for any reason, such benefits will apply to covered medical expenses incurred during the calendar year in which insurance terminates and during the next calendar year as to an accidental injury, sickness or pregnancy causing continuous total disability from such termination *294 date to the date each such medical expense is incurred."
In rendering judgment for plaintiff, the trial court, in written reasons for judgment, summarized its conclusions as follows:
"Stated simply, we conclude that the legislature by the enactment of R.S. 22:213(B)(7) and the Courts in Cataldie, Cibidie [sic], Harrington[1] and Breland[2] have established as public policy that following the termination of coverage under a policy of hospitalization insurance, where the termination was involuntary on the part of the employee-insured, the insurer must reimburse expenses incurred after the policy termination for illness or injury having its inception while the policy was in force...."
For the reasons which follow, we find the trial court's reliance on the cited cases misplaced and its conclusion that coverage under the Travelers' policy extended past December 31, 1984 clearly wrong.
We do not agree that the cited cases hold that in all cases involving involuntary termination of coverage under a health and accident insurance policy, public policy demands that the insurer must reimburse expenses incurred after policy termination for illness or injury occurring prior to termination.
While the learned trial judge correctly recognized that this case involved a group health insurance policy, as opposed to an individual policy, which was not cancelled by the insurer but which terminated by virtue of its own contractual terms, he failed to place proper significance on these facts which are clearly distinguishable from those present in Cataldie and Cabibi.
We disagree with the result reached by our Fourth Circuit brethren in Cabibi. Cabibi extended the protection afforded individual policyholders by La.R.S. 22:213(B)(7) and the rationale of Cataldie to persons covered under group health insurance policies. In our view, this was error. La.R.S. 22:221 specifically provides that the provisions of La.R.S. 22:212 through 22:214 do not apply to group or blanket health and accident insurance policies. See Breland v. Louisiana Hospital Services, Inc., supra, at page 1217. Further, we discern a distinct and important difference between "cancellation" of an insurance contract by the insurer and "termination" of coverage under a contract of insurance. "Cancellation" connotes the termination of coverage under an insurance contract, before the contractual termination date of coverage, with or without cause, by unilateral action of the insurer. La.R.S. 22:636. On the other hand, "termination" of coverage connotes cessation of coverage under an insurance contract by reason of passage of the policy period or the occurrence of some event anticipated by the terms of the contract. Thus, although insurance coverage terminates upon cancellation, termination of insurance coverage does not necessarily arise as a result of cancellation.
In the instant case, Travelers did not cancel Ms. Mezzacappo's coverage. Rather, plaintiff's coverage ceased according to the terms of the policy. Ms. Mezzacappo's employment terminated upon the sale of KAPB in November 1983 and premium payments to Travelers on her behalf were last made in October 1983. The policy provides for conversion to an individual policy of health insurance coverage when an employee's health insurance terminates. Ms. Mezzacappo, however, failed to avail herself of this provision. Accordingly, the only coverage which she retained was that provided by the "Extended Benefits After Termination of Insurance" section of the policy. In compliance with the extended benefits provision, Travelers continued to pay medical expenses incurred by Ms. Mezzacappo, as a result of her accident, for the remainder of 1983, the year her coverage terminated, and throughout 1984. This was all that was required of Travelers under the terms of the policy and the trial judge erred in finding appellant liable for any medical expenses incurred by the insured *295 after December 31, 1984. We find no statutory provision which would mandate extending coverage past that date. See Harrington v. Prudential Insurance Co., supra. Additionally, the facts of this case do not warrant a consideration of the abuse of rights doctrine. Breland, supra.
Defendant-appellant, Travelers, also argues that the trial judge erred in awarding plaintiff that portion of Dr. Pate's bill, i.e., $200.00, which it refused to pay on the basis that said amount constituted an excessive charge for the procedure performed. The record reveals that payment to Dr. Pate was reduced solely on the basis of tables compiled by the insurer without any inquiry being made of the physician as to the basis of his charge. Accordingly, we cannot say the trial judge was clearly wrong in awarding this item of damages.
For the reasons stated above, we reverse the judgment of the district court insofar as it awarded payment for medical expenses incurred by plaintiff, Pamela Mezzacappo, after December 31, 1984, and we affirm that portion of the judgment which awarded plaintiff the $200.00 of Dr. Pate's bill which was formerly disallowed. Accordingly, the judgment of the trial court is amended so as to award judgment in favor of plaintiff, Pamela Mezzacappo, and against defendant, The Travelers Insurance Company, in the full sum of Two Hundred and No/100 ($200.00) Dollars with legal interest thereon from the date of judicial demand until paid, and all costs at the trial level. Costs of this appeal are assessed to appellee.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Harrington v. Prudential Insurance Company, 477 So.2d 1272 (La.App. 3rd Cir.1985).
[2] Breland v. Louisiana Hospital Services, Inc., 468 So.2d 1215 (La.App. 1st Cir.1984).